**Electronically Filed
Supreme Court
SCWC-17-0000674
28-JUN-2019
12:33 PM**

IN THE SUPREME COURT OF THE STATE OF HAWAI I

---o0o---

_____

STATE OF HAWAI I,
Respondent/Plaintiff-Appellee,

vs.

DAVIS YEN HOY CHANG,
Petitioner/Defendant-Appellant.

_____

SCWC-17-0000674

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-17-0000674; CASE NO. 1DTA-16-04150)

JUNE 28, 2019

OPINION OF THE COURT BY RECKTENWALD, C.J.[1]

---

[1] Chief Justice Recktenwald writes for the court, except with respect to whether, prospectively, trial courts may consolidate hearings on motions to suppress evidence with trials. With respect to that issue, Justice Pollack writes for the majority of the court, and Chief Justice Recktenwald respectfully dissents.

## I.  INTRODUCTION

This case requires us to consider the advisements that a trial court provided a defendant with regard to the right to testify, when the court consolidated a suppression motion with the trial on the merits.

Davis Yen Hoy Chang (Chang) was charged with Operating a Vehicle Under the Influence of an Intoxicant (OVUII).[2]  Chang filed a motion to suppress statements that he allegedly made to the police officer who arrested him.  The District Court of the First Circuit consolidated the hearing on Chang's motion to suppress with his bench trial, and provided Chang with several advisements about his right to testify.  Chang declined to testify.  The district court granted the suppression motion in part, but found Chang guilty.  After unsuccessfully appealing to the Intermediate Court of Appeals (ICA), Chang timely filed an application for writ of certiorari with this court.

We conclude that the district court erroneously advised Chang with regard to his right to testify in the context of a consolidated suppression hearing and trial.  Accordingly, we

---

[2]    Hawaiʻi Revised Statutes (HRS) § 291E-6 1(a)(1) (2007) provides: "A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle[ w]hile under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty[.]"

vacate his conviction, and remand the case for further proceedings.

## II.   BACKGROUND

### A.   District Court Proceedings

#### 1.   Preliminary Matters

Chang was charged by complaint with OVUII.  Chang filed motions to suppress all verbal and non-verbal statements that he made after he was pulled over by Honolulu Police Department Officer Jared Spiker (Officer Spiker) and prior to his arrest, including his performance on the standardized field sobriety test (SFST).

#### 2.   Consolidated Suppression Hearing and Bench Trial

At the outset of the proceeding, the court asked defense counsel if counsel was going to consolidate the hearing on the motion to suppress with the bench trial.  The district court[3] engaged Chang as follows:

> The Court:  Mr. Chang, based on what your attorney is saying, it's my understanding that we're going to consolidate this motion with the trial[.]  [I]s that your understanding as well?
>
> Chang:     Correct.
>
> The Court:  And that's what you want to do today?

---

[3]     The Honorable Trish K. Morikawa presided.

3

> Chang:      Correct.
>
> The Court:  Okay.  So then, since we're ultimately
>             doing a trial, I'm going to go through my
>             [] trial questions.

After the district court asked Chang preliminary questions regarding a proposed plea agreement, Chang pled not guilty.  The district court then accepted the parties' stipulations, for the purposes of both the suppression motion and trial, that Officer Spiker was trained, experienced, and qualified to administer and evaluate SFSTs; would testify only as a lay witness; would not testify about the horizontal gaze nystagmus (HGN) portion of the SFST; and would not make legal conclusions as to whether Chang had passed or failed any portions of the SFST.

The district court informed Chang of his right to testify and his right not to testify at trial[4] as follows:

> The Court:  [S]ince we're doing this as a . . .
>             consolidated trial, I have to inform you,
>             Mr. Chang, you have the constitutional

---

[4]     This pre-trial advisement is required by State v. Monteil, 134 Hawai'i 361, 371, 341 P.3d 567, 577 (2014), and State v. Lewis, 94 Hawai'i 292, 297, 12 P.3d 1233, 1238 (2000).  "[P]rior to the start of trial, the court shall [] inform the defendant of [the] personal right to testify or not to testify and [] alert the defendant that, if [the defendant] has not testified by the end of the trial, the court will briefly question [the defendant] to ensure that the decision not to testify is the defendant's own decision."  State v. Han, 130 Hawai'i 83, 89, 306 P.3d 128, 134 (2013) (citing Lewis, 94 Hawai'i at 297, 12 P.3d at 1238).  The court must also advise the defendant at this time that the defendant's exercise of the right not to testify may not be used by the fact finder when determining the defendant's innocence or guilt.  Monteil, 134 Hawai'i at 373, 341 P.3d at 579.

```
                       right to testify in your own defense.  Do
                       you understand that?

      Chang:        Yes, I do.

      The Court:    Okay.  Although you should consult with
                    your attorney regarding the decision to
                    testify, it is your decision and no one
                    can prevent you from testifying should you
                    . . . choose to do so; do you understand?

      Chang:        I do.

      The Court:    Okay.  If you decide to testify, the
                    prosecutor will be allowed to cross-
                    examine you; do you understand?

      Chang:        I do understand that.

      The Court:    Okay.  You also have a constitutional
                    right not to testify and to remain silent.
                    Do you understand that as well?

      Chang:        Yes.

      The Court:    Okay.  If you choose not to testify, the
                    court cannot hold your silence against you
                    in deciding your case; do you understand?

      Chang:        Yes.

                       . . . .

      The Court:    Do you have any questions about what I
                    have explained?

      Chang:        No, I do not.
```

The State called Officer Spiker as its sole witness for the purposes of both the suppression motion and the trial.

### a.    Officer Spiker's Testimony

Officer Spiker testified that at approximately 1:10 a.m. on November 13, 2016, he noticed Chang driving without

5

illuminated headlights.  Officer Spiker observed Chang make an illegal left turn at an intersection with "at least two signs that [said] no left turn."  Officer Spiker followed Chang and pulled him over.

Officer Spiker testified that as soon as he began conversing with Chang, who had been driving alone, he smelled a "strong odor of alcohol" coming from Chang's breath.  He also noticed that Chang's eyes were "red, watery, and glassy," that Chang's face was flushed, and that Chang's speech was slurred.

Officer Spiker asked for Chang's driver's license, registration, and insurance, which Chang provided without difficulty or delay.  Officer Spiker informed Chang that he had been pulled over because of his driving infractions and offered Chang an SFST.[5]  At Officer Spiker's request, Chang exited his vehicle without difficulty.  Officer Spiker testified that at this point, Chang "was not free to leave."

Officer Spiker testified that Chang agreed to participate in the SFST and stated "that he had [had] some drinks

---

[5]     On cross-examination, Officer Spiker explained that although he told Chang that participation in the SFST was "voluntary," he did not specifically tell Chang that he had "the right to refuse" the test.  Officer Spiker explained, "I didn't, like, demand he get out [of the vehicle] but I just kind of said, . . . [I'm] going to offer you [an SFST] . . . based on your traffic violations and indicia of alcohol, and if you'd like to participate, and then he said yeah, he would."

earlier."  After Chang answered "no" to each of the medical rule-out questions posed by Officer Spiker, Officer Spiker administered the SFST.  The SFST consisted of the HGN test, the walk-and-turn test, and the one-leg-stand test.  Officer Spiker testified that Chang did not perform the walk-and-turn test or the one-leg-stand test as instructed.  With respect to the walk-and-turn test, Officer Spiker noted that Chang started the test before being instructed to do so; missed numerous heel-to-toe steps; stepped off the line three times; and turned the wrong way without the required pivot.  With respect to the one-leg-stand test, Officer Spiker noted that Chang's right foot touched the ground multiple times during the balancing sets; Chang did not look at his foot throughout the sets despite instructions to do so; Chang skipped numbers as he counted; and Chang was "swaying noticeably."

Officer Spiker further testified that throughout the SFST, Chang was argumentative, interrupted him, and asked him at least five times why he pulled Chang over, despite his repeated explanations.  Officer Spiker also testified that, at some point during the SFST, Chang was offered a preliminary alcohol screening device test (PAS), but refused the PAS because he said "he didn't trust it."

7

Officer Spiker testified that he arrested Chang for OVUII, in light of the totality of the circumstances. He explained that he considers the "totality of the circumstances" when deciding whether to arrest someone for OVUII, including the amount of traffic violations observed, indicia of intoxication, and an individual's demeanor, SFST performance, and abilities to cooperate and follow instructions. Officer Spiker also testified that he did not at any point advise Chang regarding the right to remain silent.

**b.    Hearing on the Motion to Suppress**

After Officer Spiker testified, the district court addressed Chang's motion to suppress. The following discussion took place, wherein defense counsel initially indicated that Chang intended to testify for purposes of the suppression hearing:

> The Court:  Why don't we do the argument on the motion
>             . . . first, okay? . . . . [W]ell, even
>             before then, did you want to have anyone
>             [] testify in regard to the motion? . . .
>             [I]f you're going to have [Chang] testify
>             in regard to the motion, I need to know[.]
>
>             . . . .
>
>             Wait.  This is going to get a little
>             confusing since we're doing the motion
>             combined with the trial.  So I'm going to

8

> Tachibana[6] him a second time – okay.
> Wait.  So the State has no further
> witnesses.  You're saying for purposes of
> this motion you may have a witness?

> Defense:    Only [Chang].  Only for purposes of this
>             motion.

(Emphasis added).

The district court proceeded to advise Chang that any testimony offered at the suppression hearing would be considered for the purposes of trial:

> The Court:   [S]ince we're doing it as a consolidation
>              we kind of have to do it together so I'm
>              going to Tachibana him[.] . . . [W]e'll do
>              that but I'm feeling like I'm skipping
>              steps because you still didn't make your
>              motion and we still didn't – okay.  Let me
>              just Tachibana him because if you're going
>              to have him testify for purposes of the
>              motion we gotta have that on the – okay.

> The State:   I'm sorry, your honor, to interfere but
>              because this was consolidated, [] I would
>              assume if he testifies it's going to be []
>              part of the trial.

> The Court:   [T]hat's the problem is if [Chang]'s going
>              to testify it's also – since we're
>              consolidating it, it's part of the trial
>              as well.

> Defense:     Right.  And we can stipulate that we'll

---

[6]    In Tachibana v. State, 79 Hawaiʻi 226, 236, 900 P.2d 1293, 1303 (1995), we held that trial courts must advise criminal defendants of the right to testify and, where a defendant chooses not to testify, the trial court must obtain an on-the-record waiver of that right.  This on-the-record waiver serves as an assurance that the defendant was aware of the right to testify and that the defendant's waiver of that right was knowing, voluntary, and intelligent.  Id. at 234-37, 900 P.2d at 1301-04.  Further, in State v. Torres, 144 Hawaiʻi 282, 285, 439 P.3d 234, 237 (2019), we made clear that "trial courts must engage the defendant in an on-the-record colloquy regarding the right to testify and to not testify when either right is waived, effectively making such a colloquy necessary in every [criminal] trial."

9

> limit the questioning to the motion issue because I'm not having him go into particular details.  And so sometimes there'll be a stipulation with the State that we'll just limit the questioning to the motion and –

The Court:  See, I don't know how we can do that since we're consolidating it.

Defense:  Well, that's more for efficiency purposes[.] . . .  If we consolidate, it just means we don't want to have a separate hearing on the motions and a trial another day, so for efficiency purposes . . . we're consolidating everything so we don't have to have multiple hearings on multiple dates.

The Court:  Right.  But what he testifies to I'm going to listen to it and decide in regard to the trial as well.  You see what I mean?

. . . .

So, . . . <u>even if you're limiting it to just the motion, whatever he gets up on the stand to [say], I'm going to actually have to decide on it for the trial</u>.

Defense:  Understood.  But there's an understanding with the State that we're limiting the questioning to the motion as . . . it relates to the motion[.] . . .  [T]hat's how . . . historically we've done it, we limit the question to the motion, we're not going to go into, I guess, drinking alcohol, that sort of thing, or if it existed or not.  I'm just focusing on the interaction between him and the officer as to the ordering out, the consent, [the] voluntariness of [] the [SFST] and any statements, you know.

The Court:  Okay.  But <u>the court's going to listen to all of that [testimony] and use all of that in determining for the trial [Chang's] guilt or innocence as well</u>.

. . . .

Because if [Chang] doesn't want to

10

testify, I want to make sure he has that right not to testify.  But <u>if he testifies for purposes of the motion, then we're kind of stuck at that point since we're consolidating the motion and the trial</u>, so I can't unhear what I've heard.  I mean, I guess . . . I technically could but it'd be . . .

Defense:    Hard.

. . . .

The Court:  I mean, but it's your choice.  So if you want to, you can put [Chang] on, but I'm just trying to say, <u>since we're doing this as a consolidated hearing, whatever he's saying in the motion, technically since we're consolidating it, I don't know how -- I can't use that for the trial.</u>

. . . .

The State:  Or, your honor, I know the court already kind of consolidated the hearing and the trial but if defense is going to have his witness testify for the purposes of the motion, we don't necessarily have an objection as to separating it for trial purposes.

. . . .

So if that's what defense counsel wants to do, [] maybe there was a . . . misunderstanding.

. . . .

The Court:  So if you want to put [Chang] on just for purposes of the motion, so then technically I guess we're not consolidating, okay, so we have to go backwards.  [Be]cause if we're not going to consolidate it, I mean, we're consolidating [Officer Spiker's] portion of the testimony but not [Chang's] portion of the testimony because he always has the right to remain silent for trial.

Defense:    Correct.

11

> The Court: Okay. And if there is a separate motion
> and the [] trial, like I said, I can put
> [] aside whatever [Chang] said, but since
> it was the agreement to consolidate, then
> I couldn't. So if you want to do the
> separate motion now and keep it separate
> and then do the trial portion in regard to
> your client, it's a little strange for me,
> but I can do that, if that's what you want
> to do.

(Emphases added).

The district court then recessed so that Chang could discuss with defense counsel whether he would testify on his motion to suppress and bifurcate the hearing on the motion from the trial. After reconvening, however, the district court attempted to correct its prior statements about Chang's inability to testify solely for the purposes of the motion:

> The Court: So I just want to make everything clear []
> [be]cause you threw me for a loop, Mr.
> Lewis, saying that [Chang] wanted to
> testify [for purposes of the motion to
> suppress]. It's very rare that it happens
> in a motion to suppress so I had to
> rethink everything, since it was a
> consolidated hearing.
>
> [J]ust so that we're clear, if [Chang]
> wants to testify for the motion to
> suppress, he has that right, [] but I'd
> have to [] bifurcate, instead of
> consolidating it[.] . . . So he has the
> right to testify for the motion. I . . .
> won't Tachibana him. I can listen to him
> testify for the motion and then I can
> rule[.]
>
> . . . .
>
> [I]f you consolidate the testimony of
> [Officer Spiker], then at that point if

12

you wanted to make any motions, you can make any motions at that point and then [Chang] could decide if he wants to testify for purposes of trial.

. . . .

Okay? And then any testimony that [Chang] made for purposes of the motion the court, only if he wanted to, would the court then decide, you know, if he wants to testify, then we can decide whether or not . . . what he testified to earlier in the motion would be consolidated or not or if he wanted to add to it or things like that. Okay. So it's two separate rights. So I don't want him to think that he doesn't have that right.

. . . .

So, Mr. Chang, like I said, I know it was a little confusing, and I might have been confusing to you, so I want to make sure that it's absolutely clear to you. Although we agreed to consolidate . . . the motion and the trial . . . , you have a right to testify at the motion as well as a right to testify at trial.

Chang:       Okay.

The Court:   That whole right to remain silent, that goes for the trial portion of it. . . . But if you wanted to testify for the motion, it's your right. We can figure out how to work the logistics of it in our own way. And if you testify at the motion, it doesn't necessarily mean that what you testify in the motion I'm automatically going to use for the trial.

Chang:       Okay.

The Court:   If you didn't want to, you know, whatever you said in the motion, if you didn't want it for the trial, I would just have to take it out of my mind and put it on the side. Okay?

Chang:       Okay.

13

> The Court: So that's your right. So I want to make sure you clearly understand your rights. Okay?
>
> Chang: Yes, your honor.

(Emphases added).

Chang ultimately declined to testify for purposes of the suppression hearing:

> The Court: So now, knowing that, . . . are you going to be testifying in regard to the motion?
>
> Defense: No.
>
> Chang: No. No, I will not, your honor.
>
> The Court: Okay. And that's your choice not to?
>
> Chang: Correct.

With regard to the motion, Chang sought to exclude from evidence any questions that he asked Officer Spiker regarding why he had been pulled over, any mistakes that he made while counting, and his performance on the SFST. He argued that any statements that he made after being pulled over required suppression in light of Officer Spiker's testimony that he was "not free to leave" and Officer Spiker's failure to advise him of his right to remain silent. The State argued that Officer Spiker's traffic stop was noncustodial due to its brevity and non-coercive nature, and as such, Officer Spiker was not required to advise Chang of his right to remain silent.

The district court granted Chang's motion to suppress with regard to his verbal statements, pursuant to State v. Tsujimura, 140 Hawaiʻi 299, 400 P.3d 500 (2017). However, it denied Chang's motion to suppress with regard to Officer Spiker's observations of Chang's "physical action" during the SFST because Chang "voluntarily agreed to do the [SFST]." The defense moved to dismiss Chang's charge on the ground of insufficient evidence, but the district court denied the motion, considering the evidence "in the light most favorable to the State."

c. **The Trial**

The district court conducted a Tachibana colloquy, explaining to Chang that: he had the constitutional right to testify or not to testify at trial; no one could prevent him from doing so; if he chose to testify, he would be subject to cross-examination; and if he chose to remain silent, his silence could not be held against him. Chang confirmed that he understood these rights and declined to testify.

In its closing argument, the State argued that Officer Spiker's testimony regarding Chang's traffic violations and SFST performance was sufficient to carry its burden of proof that Chang committed OVUII. In response, the defense argued that Chang's traffic violations were not "indicative of [alcohol]

15

impairment"; Chang was able to produce the requested documents to Officer Spiker without difficulty; and even though Chang's SFST performance was "not perfect," Officer Spiker's testimony did not constitute a sufficient basis for the district court to find that Chang committed OVUII.

The district court found Officer Spiker's testimony to be credible and explained that "the only question [was] whether or not [Chang, while] operating [a] vehicle[,] [consumed alcohol] in an amount sufficient to impair his normal mental faculties or ability to care for the person and guard against casualty." The district court found Chang guilty of OVUII and sentenced him to a $150 fine and other requirements.

## B.   Appeal to the ICA

On appeal to the ICA, Chang contended that: (1) under Tsujimura, the district court erred in denying Chang's motion to suppress evidence of his SFST performance; (2) his conviction was not supported by substantial evidence; (3) his waivers of his rights to testify for the purposes of the suppression motion and trial were not knowing, intelligent, and voluntary; and (4) Chang's attorney provided ineffective assistance of counsel. The ICA rejected Chang's arguments and affirmed his conviction.

First, the ICA held that the district court had

16

appropriately considered Chang's SFST performance, given this court's holding in State v. Wyatt that routine traffic stops do not constitute "custodial interrogation." 67 Haw. 293, 687 P.2d 544 (1984). The ICA rejected Chang's reliance on Tsujimura, explaining that in Tsujimura, "the issue was whether the defendant's pre-arrest silence could be used against him substantively as an implication of guilt, [and] not whether[, as here,] non-custodial, pre-arrest statements made by a defendant [could] be used as evidence." Further, citing to State v. Kaleohano, 99 Hawai'i 370, 376, 56 P.3d 138, 144 (2002), the ICA held that "Chang was not in custody merely by virtue of being pulled over during a traffic stop[,]" and that Chang was not "subjected to custodial interrogation" at any point prior to, or during, the SFST. The ICA determined that Miranda warnings – including an advisement of Chang's right to remain silent – were not necessary, and Chang's right against self-incrimination was not violated, because the totality of the circumstances reflected that Chang was not in custody. In light of this conclusion, and the district court's finding that Officer Spiker was a credible witness, the ICA held that there was sufficient evidence to support Chang's conviction.

Second, the ICA concluded that Chang knowingly,

17

intelligently, and voluntarily waived his rights to testify for purposes of both his motion and trial.  While acknowledging that the district court "initial[ly] misstate[d] . . . the implications of consolidating the hearing on the motion to suppress with the trial[,]" the ICA noted that the district court later clarified that Chang "could choose whether his testimony for the motion to suppress would be used for the purposes of trial."  Because the district court "remedied its misstatements" by stating that it would consider Chang's testimony for the motion to suppress separately, granted a recess so that Chang could confer with defense counsel, and reiterated its corrected position, and because Chang ultimately "indicated that he understood" his rights, the ICA could not "conclude that Chang's rights were violated by the [d]istrict [c]ourt's initial misstatement."

The ICA also rejected Chang's argument that his waiver of the right to testify at trial was "irreparably compromised by the [district] court's misapprehension that it could not hold a consolidated hearing and trial without holding Chang's testimony on the motion against him."  The ICA explained that any confusion regarding whether the district court could consider Chang's testimony on the suppression motion for purposes of the trial

18

"was irrelevant to Chang's subsequent decision to waive his right to testify at trial."  As such, Chang's waiver of the right to testify at trial was knowing, intelligent, and voluntary.

Finally, the ICA rejected Chang's argument that his attorney provided ineffective assistance of counsel.  The ICA noted that "there [was] nothing in the record to support Chang's assertions concerning what his counsel did or did not advise him."  Further, the ICA determined that Chang's claim was without merit, as "the [d]istrict [c]ourt itself advised Chang that he could choose to testify only for the purpose of the motion to suppress[] and Chang acknowledged that he understood this advisement, but that he did not want to testify."

### III.  STANDARDS OF REVIEW

#### A.  Constitutional Law

Appellate courts answer "questions of constitutional law by exercising [their] own independent judgment based on the facts of the case.  Thus, [this court reviews] questions of constitutional law under the 'right/wrong' standard."  State v. Fields, 115 Hawaiʻi 503, 511, 168 P.3d 955, 963 (2007) (internal quotation marks, citations, and ellipses omitted).

#### B.  Sufficiency of the Evidence

We have long held that evidence adduced in the trial

19

> court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or a jury.  The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact.  Indeed, even if it could be said in a bench trial that the conviction is against the weight of the evidence, as long as there is substantial evidence to support the requisite findings for conviction, the trial court will be affirmed.

State v. Matavale, 115 Hawai i 149, 157-58, 166 P.3d 322, 330-31 (2007).

> Substantial evidence as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable [a person] of reasonable caution to support a conclusion.  And as trier of fact, the trial judge is free to make all reasonable and rational inferences under the facts in evidence, including circumstantial evidence.

State v. Batson, 73 Haw. 236, 248-49, 831 P.2d 924, 931 (1992) (internal quotation marks and citations omitted).

## IV.  DISCUSSION

In his application for writ of certiorari, Chang asserts the same arguments that he raised on appeal.  The dispositive issue, however, is whether Chang knowingly, intelligently, and voluntarily waived his right to testify for purposes of his suppression motion.[7]

As set forth below, we hold that the district court

---

[7]    We do not address Chang's other arguments, except to find that sufficient evidence supported Chang's conviction.

20

erroneously advised Chang concerning his right to testify for the purposes of the suppression motion by suggesting that Chang's testimony on the motion could be used as evidence of his guilt or innocence at trial. Although the district court attempted to correct its misstatements on this matter, it failed to do so adequately. Accordingly, we cannot conclude that Chang validly waived his right to testify.

Hawai i Rules of Penal Procedure (HRPP) Rule 12(e) provides:

> A motion made before trial shall be determined before trial unless the court orders that it be deferred for determination at the trial of the general issue or until after verdict; provided that a motion to suppress made before trial shall be determined before trial. Where factual issues are involved in determining a motion, the court shall state its essential findings on the records.

HRPP Rule 12(e) (2007).

We previously held, however, that pre-trial suppression hearings and trials could be consolidated, provided that the parties agreed to do so on the record. In State v. Doyle, the defendant did not object to the consolidation of her suppression hearing and trial. 64 Haw. 229, 231 n.3, 638 P.2d 332, 334 n.3 (1981). On appeal, this court rejected the defendant's challenge to the consolidation, holding that:

> [W]here the trial court at a bench trial expressly

> advises the parties, for the record, of its intention
> to hear the motion and the merits contemporaneously[,]
> and no objection is voiced by either party to the
> proposed procedure, the trial court may then proceed
> to hear the issues contemporaneously.  The trial court
> should, however, enter its ruling on the motion to
> suppress before finally determining the merits of the
> charge against the defendant.  Moreover, we remind the
> trial courts that "[w]here factual issues are involved
> in determining a motion, the court shall state its
> essential findings on the record."

Id. at 231, 638 P.2d at 334 (citations and footnotes omitted).

In State v. Thomas, "we remind[ed] the lower courts
that Doyle require[d] an express statement and agreement by the
parties, on the record, where the court intend[ed] to hear
testimony on the motion and merits contemporaneously."  72 Haw.
48, 54, 805 P.2d 1212, 1214 (1991).

Thus, Doyle and Thomas authorized the consolidation of
proceedings when the trial court did so expressly and the parties
agreed to such consolidation, which was the case here.[8]  The
district court, however, was nevertheless required to accurately
advise Chang of the implications of testifying in the unique
context of a consolidated proceeding.  Here, the district court's
initial advisements on the subject were erroneous and its
subsequent attempts to correct its error were insufficient.

As noted above, the district court initially advised

---

[8]     However, the majority opinion by Justice Pollack prospectively overrules
Doyle and Thomas.

22

Chang that if he chose to testify for purposes of the suppression hearing, his testimony could be used against him at trial:

> The Court: [T]hat's the problem is if [Chang]'s going to testify it's also – since we're consolidating it, it's part of the trial as well.
>
> . . . .
>
> [W]hat [Chang] testifies to [in the suppression hearing,] I'm going to listen to it and decide in regard to the trial as well. You see what I mean?
>
> . . . .
>
> So, I mean, even if you're limiting it to just the motion, whatever he gets up on the stand to [say], I'm going to actually have to decide on it for the trial.
>
> . . . .
>
> [T]he court's going to listen to all of that [testimony] and use all of that in determining for the trial [Chang's] guilt or innocence as well.
>
> . . . .
>
> [I]f [Chang] testifies for purposes of the motion, then we're kind of stuck at that point since we're consolidating the motion and the trial, so I can't unhear what I've heard.
>
> . . . .
>
> [S]ince we're doing this as a consolidated hearing, whatever [Chang's] saying in the motion, technically since we're consolidating it, I don't know how [] I can't use that for the trial.

23

These statements by the court were in error.  See, e.g., Simmons v. United States, 390 U.S. 377 (1968).  In Simmons, the defendant testified at a suppression hearing with regard to whether he was the owner of items that were found in a suitcase during a search that he contended was illegal.  Id. at 389.  The trial court allowed that testimony to be used against the defendant at trial and the defendant was ultimately convicted of robbery.  Id.  The United States Supreme Court reversed the conviction, noting:

> In these circumstances, we find it intolerable that
> one constitutional right should have to be surrendered
> in order to assert another.  We therefore hold that
> when a defendant testifies in support of a motion to
> suppress evidence on Fourth Amendment grounds, his
> testimony may not thereafter be admitted against him
> at trial on the issue of guilt unless he makes no
> objection.

Id. at 394.

Thus, pursuant to Simmons, Chang had the right to testify for the purpose of his motion to suppress without having that testimony used against him at trial.  It was essential that Chang be informed of those rights in order to ensure that his decision whether to testify at the suppression hearing was knowingly and intelligently made.

Under Tachibana and its progeny, trial courts must engage in an on-the-record colloquy with a defendant, explaining

24

to the defendant the right to testify and the right not to testify. 79 Hawai i at 236, 900 P.2d at 1303. The purpose of the colloquy is to ensure that any waiver of these rights is knowing, intelligent, and voluntary. Id. As we have explained, "[a] defendant's understanding of the right to testify or not is fundamental to a fair trial[,]" and trial courts have a "serious and weighty responsibility" to determine whether a waiver of those rights is knowing and voluntary. State v. Monteil, 134 Hawai i 361, 371, 341 P.3d 567, 577 (2014) (citing Tachibana, 79 Hawai i at 233, 900 P.2d at 1300). Furthermore, "[i]n conducting a colloquy, the trial court must be careful not to influence the defendant's decision whether or not to testify." Id. at 370, 341 P.3d at 576 (citation omitted).

"In determining whether a waiver of the right to testify was voluntarily and intelligently made, this court looks to the totality of the facts and circumstances of each particular case." State v. Celestine, 142 Hawai i 165, 171, 415 P.3d 907, 913 (2018) (citation omitted). Under the totality of the circumstances here, it is clear that the district court erred in conducting its pre-trial advisements, by initially suggesting that Chang's testimony on the suppression motion would be

considered by the district court for purposes of the trial.

Although it appears that the district court recognized its error and attempted to correct it, we conclude that the district court's efforts did not adequately dispel the confusion created by the court's prior misstatements. Significantly, the district court incorrectly implied that it had discretion to consider Chang's suppression hearing testimony at trial by stating, "if you testify at the motion, it doesn't <u>necessarily</u> mean that what you testify in the motion I'm <u>automatically</u> going to use for the trial." (Emphases added). In fact, as discussed above, the district court would have been precluded from considering Chang's suppression hearing testimony absent Chang's consent. <u>Simmons</u>, 390 U.S. at 393-94.

Considering all these circumstances, we cannot conclude that Chang knowingly, intelligently, and voluntarily waived his right to testify for the purposes of the pre-trial suppression hearing. Accordingly, his conviction must be vacated.

## V. CONCLUSION

We vacate the ICA's October 3, 2018 Judgment on Appeal and the District Court of the First Circuit's August 25, 2017

26

Notice of Entry of Judgment and/or Order and Plea/Judgment, and remand the case for further proceedings.

| | |
|---|---|
| Alen M. Kaneshiro<br>for petitioner | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| Brian R. Vincent<br>for respondent | /s/ Sabrina S. McKenna |
| | /s/ Richard W. Pollack |
| | /s/ Michael D. Wilson |

